919 F.2d 601
 1991 A.M.C. 499
 In re: KOREA SHIPPING CORP., LTD., now known as Hanjin
Container Lines, Inc., owner of the Korean Wonis
One, for exoneration from or limitation
of liability.
KOREA SHIPPING CORP., LTD., Petitioner-Appellant,
v.
TOKIO MARINE & FIRE INSURANCE COMPANY, LTD., Malayan
Overseas Insurance Company; VSI Hardware Industries;
Schitech Medical Products, Inc.; Morrison Line, Inc.;
International Cargo & Surety Insurance Company; American
Trading & Production Corporation; Newell Company;
Fireman's Fund Insurance Company; Rockwell International;
Compass International, Inc.; Janka, Inc.; USA Maxam, Inc.
dba Wholesale World; Mighty Enterprises, Inc.; Weita
International Corporation; All Pacific Trading, Inc.;
Thomas Monahan Company; Sun Insurance Company; Gre Talbot;
Bird & Company, as subrogor for Ryder International Freight
& Customs Services and Collenzione Europe USA, Inc., Cathay
Company, Ltd.; Travelers Indemnity Company; Arche &
Company, Ltd.; Great American Insurance Company; Jeuro
Container Transport USA, Inc.; A.O.K. International, Inc.;
LEP International (Far East), Ltd.; Aempac Systems, Inc.;
Aidcar Company, Ltd.; Regal Manufacturing Company;
Recovery Services International, Claimants-Appellees.
 Nos. 89-56245, 89-55919.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Oct. 3, 1990.
Decided Nov. 26, 1990.
 
 David E.R. Wooley, Cogswell, Nakazawa & Russell, Long Beach, Cal., for petitioner-appellant.
 Joseph P. Tabrisky, Fisher & Porter, Long Beach, Cal., for Rockwell Intern., Newell Co., Compass Intern., Fireman's Fund Ins. Co., Tokio Marine & Fire Ins. Co., A.O.K. Intern., American Trading & Production Corp., Schitech Medical Products, CTS Products, Malayan Overseas, Morrison Line, USA Maxam, VSI Hardware Industries, Shing Kong Fire & Marine Ins. Co., Ltd. and Janka, Inc., claimants-appellees.
 Andrew B. Downs, Derby, Cook, Quinby & Tweedt, San Francisco, Cal., for All Pacific Trading, Inc. and Thomas Monahan Co., claimants-appellees.
 Appeal from the United States District Court for the Central District of California.
 Before PREGERSON, REINHARDT and HALL, Circuit Judges.
 PREGERSON, Circuit Judge:
 
 
 1
 Korea Shipping Corp., Ltd. ("Korea Shipping") brought an action in the United States District Court to limit its liability for damage to cargo aboard its ship. The district court dismissed the action for lack of jurisdiction because the statutory liability limit of Korea Shipping as determined under United States limitation law exceeded the aggregate claims for the cargo damages. Korea Shipping appeals, and we affirm.
 
 BACKGROUND
 
 2
 The facts are undisputed. Cargo headed to the U.S. aboard the Korea Wonis One, a ship owned by Korea Shipping, now known as Hanjin Container Lines, Inc., was damaged in Korean territorial waters. Parties with interest in the cargo filed claims for damages in U.S. courts. Korea Shipping and the claimants agree that the Carriage of Goods by Sea Act ("COGSA"), 46 U.S.C.A. App.. Secs. 1300-1315 (West 1975 & Supp.1989), governs the substantive liability of Korea Shipping for the cargo damages. The claims add up to about $1,200,000.
 
 
 3
 Korea Shipping brought an action in the U.S. District Court to limit its liability for damages to the cargo.[1] Various maritime countries have limitation laws which allow the owners of ocean-going ships to limit their total liability for damage or loss of cargo arising from a single voyage to a statutory amount.[2] United States limitation law allows a foreign shipowner to limit its liability by bringing a limitation action in a U.S. court. Korea Shipping argued that, although it was proceeding in a U.S. court using U.S. limitation procedures, it was entitled to limit its liability to the lower statutory limit under Korean law. Korea Shipping reasoned that the liability limit under Korean law should apply to the action because U.S. maritime choice-of-law rules favored the application of Korean limitation law.[3] Korea Shipping contended that since Korean limitation law applied, its total liability from the accident should be limited to $420,000, the liability limit as determined under Korean limitation law. Under Korean limitation law, the statutory limit is derived from the tonnage of the ship.[4]
 
 
 4
 The claimants moved for summary judgment on the issue of the applicable liability limit. The claimants asserted that Korea Shipping's liability should be fixed at the higher amount of $1,320,000, the liability limit as determined under the Limitation of Liability Act ("LLA"), 46 U.S.C.A. App.. Secs. 181-189 (West 1958 & Supp.1990)--the U.S. law of limitation. Under LLA, the liability limit equals the sum of the actual value of the shipowner's interest in the ship after damage is sustained[5] plus the freight charge owed the shipowner at the end of the voyage. The claimants argued that the maritime choice-of-law rule invoked by Korea Shipping does not apply to the question of which country's limitation law applies and that U.S. courts must determine the liability limit using U.S. limitation law.
 
 
 5
 The district court agreed with the claimants and held that the higher U.S. limitation limit applies here. The court then dismissed the case for lack of jurisdiction, because an action may be brought under U.S. limitation law only when the aggregate claims exceed the amount of the liability limit. When the aggregate amount of the claims against the shipowner is less than the applicable liability limit, all the claims can be paid in full and there is no need to "limit" the shipowner's liability.
 
 
 6
 Korea Shipping appeals, asserting that the liability limit should be determined by Korean limitation law and that, in that case, the liability limit would be less than the aggregate claims, providing a continued need for supervision by the court.
 
 DISCUSSION
 A. Limitation Proceedings
 
 7
 A foreign shipowner may initiate a limitation action under LLA in a U.S. court by depositing with the court a limitation fund equal to the amount of the liability limit under LLA:[6] the value of the ship plus the pending freight owed. Once the shipowner files a petition under LLA, all actions against the ship or the shipowner in U.S. courts are enjoined,[7] and all parties seeking to recover from the shipowner must file their claims in the limitation proceeding.
 
 
 8
 At the outset, the court hearing the limitation action must determine which country's limitation law governs the liability limit. Black Diamond S.S. Corp. v. Robert Stewart & Sons, Ltd. (The Norwalk Victory), 336 U.S. 386, 397-98, 69 S.Ct. 622, 628-29, 93 L.Ed. 754 (1949). If the court determines that foreign limitation law controls the liability limit, the limitation fund filed with the court is adjusted accordingly. If the court determines that U.S. law controls the liability limit, then the limitation fund deposited under LLA stays the same.
 
 
 9
 The court must then compare the amount of the limitation fund with the total amount of all the claims pending in the limitation action. If the aggregate of all the claims exceeds the limitation fund, then the fund is divided proportionately among the claimants.[8] If, however, the claims do not exceed the limitation fund, then the court must dismiss the action. Lake Tankers Corp. v. Henn, 354 U.S. 147, 151-152, 77 S.Ct. 1269, 1271-1272, 1 L.Ed.2d 1246 (1957); The Norwalk Victory, 336 U.S. at 393, 69 S.Ct. at 426. This rule reflects the logical proposition that the courts need not adjudicate and apportion a limited fund among claims when the claims, paid in full, would not add up to the liability limit.[9] Each claimant is then free to pursue its claim in any appropriate forum.
 
 B. Analysis
 
 10
 The dispute in the present case arises because the parties disagree as to which country's limitation law controls Korea Shipping's liability limit. A grant of summary judgment is reviewed de novo. Kruso v. International Telephone & Telegraph Corp., 872 F.2d 1416, 1421 (9th Cir.1989). If U.S. limitation law determines the limit, then the district court properly dismissed the action because the claims would not exceed the liability limit under LLA. If Korean limitation law controls, then the action should be reinstated because the aggregate of the claims would exceed the liability limit under Korean limitation law.
 
 
 11
 The claimants base their argument that U.S. limitation law applies on Oceanic Steam Navigation Co. v. Mellor (The Titanic ), 233 U.S. 718, 34 S.Ct. 754, 58 L.Ed. 1171 (1914). The Titanic, a British steamship, hit an iceberg on the high seas and sank with the loss of many lives and the total loss of vessel and cargo. The owners of The Titanic sought to limit their liability to the liability limit provided by U.S. law.[10] The Supreme Court held that, because U.S. limitation law is procedural, the courts must apply U.S. limitation law in limitation proceedings brought in U.S. courts, even when the substantive law governing the parties' liabilities is foreign. 233 U.S. at 733, 34 S.Ct. at 756.
 
 
 12
 It is clear that, under The Titanic, Korea Shipping's liability limit should be $1,320,000, the amount determined under LLA. Korea Shipping contends that a more recent Supreme Court case, The Norwalk Victory, 336 U.S. 386, 69 S.Ct. 622, 93 L.Ed. 754 (1949), governs and requires a different result. Korea Shipping, however, is mistaken.
 
 
 13
 In The Norwalk Victory, the petitioner sought to limit its liability in U.S. courts for claims arising from a collision of its ship with a British ship in Belgian territorial waters. It was undisputed that Belgian law governed the substantive rights of the parties. The petitioner wanted to limit its liability to the limit provided under Belgian law.[11] The Court, reexamining The Titanic, ruled that the courts must apply foreign limitation law if the substantive liability of the parties is governed by a foreign law and if the limitation law of the foreign country is such an integral part of the substantive law governing the action that it can be said to "attach" to the substantive liability law. 336 U.S. at 395, 69 S.Ct. at 627. In such cases, the foreign limitation law is deemed to be "substantive" and U.S. courts must apply the foreign limitation law along with the foreign substantive law of liability. If either of the two conditions is not met, then U.S. courts apply the rule in The Titanic: U.S. limitation law controls.
 
 
 14
 The Norwalk Victory does not apply here. The parties have agreed that COGSA, a U.S. law of substantive liability, governs the rights of the parties. There is no need to go further to see if Korean limitation law "attaches" to the law of substantive liability, because there is no substantive Korean liability law to which Korean limitation law could attach. Our conclusion is consistent with our decision in In re Bowoon Sangsa Co. (The M/T Bowoon), 720 F.2d 595 (9th Cir.1983). There we noted that The Norwalk Victory does not apply where American law governs the substantive liability of the parties. 720 F.2d at 599 n. 5.
 
 
 15
 Korea Shipping argues that, while The Titanic may be used to decrease the shipowner's liability limit when LLA dictates a lower limit than does foreign limitation law, it may not be used to increase the limit when LLA dictates a higher limit. While it is true that in The Titanic, applying U.S. limitation law resulted in a lower limit than under foreign limitation law, the Court did not limit its decision to that situation alone. In fact, the Court anticipated that one of the effects of its holding could be that an owner of a vessel seeking to limit its liability in a foreign court might have to pay more than it would have in its home jurisdiction:
 
 
 16
 [It] is conceivable that, if [an owner] sought the advantage of an alien law, it might as a condition have to pay more than its liability under the law of its flag in some cases. But the imagining of such possible difficult[y] is no sufficient reason for not applying the statute as it has been construed, on the whole, it would seem, with good effect.
 
 
 17
 233 U.S. at 734, 34 S.Ct. at 756. The above passage indicates that the Court anticipated that, under its holding in The Titanic, U.S. courts would have to apply U.S. limitation law whether or not the amount of the limitation fund would be greater under U.S. law than under foreign law.
 
 
 18
 Equally erroneous is Korea Shipping's assertion that The Norwalk Victory held that a U.S. court must apply foreign limitation law, regardless of which country's substantive liability law applies, if it finds that foreign limitation law is substantive and otherwise applicable under maritime choice-of-law analysis. It is true that the Court in The Norwalk Victory discussed the issue in terms of whether the foreign limitation law could be deemed procedural or substantive. See 336 U.S. at 395-96, 69 S.Ct. at 627-28. But, in the present context, it is nonsensical to debate whether Korean limitation law is substantive. "Substantive" as applied to limitation law is a term of art. As The Norwalk Victory made clear, the term refers to cases where foreign limitation law is an integral part of the foreign substantive law of liability so that the limit can be said to "attach" to the substantive liability. Id. The present case is not governed by Korean law of substantive liability to which Korean limitation law can "attach." The district court therefore properly refused to decide whether, in the abstract, Korean limitation law is substantive.
 
 
 19
 Korea Shipping cites In re K.S. Line Corp. (The M/V Swibon), 596 F.Supp. 1268 (D.Alaska 1984), as holding that Korean limitation law is substantive within the meaning of The Norwalk Victory, but the facts in that case were different. In The M/V Swibon, the parties agreed that Korean law controlled the underlying substantive liability. 596 F.Supp. at 1272 n. 6. It was thus appropriate and necessary for the district court to determine whether Korean limitation law was substantive. As noted earlier, without Korean substantive law, we need not even get into The Norwalk Victory analysis.
 
 
 20
 Korea Shipping's argument that the court adopt the maritime choice-of-law test in Lauritzen v. Larsen,[12] 345 U.S. 571, 73 S.Ct. 921, 97 L.Ed. 1254 (1953), in choosing the liability limitation law is also unpersuasive. Lauritzen dealt with the choice of the applicable substantive law of liability; that issue is not raised here because the parties have stipulated that U.S. law governs the substantive liability of Korea Shipping. The Court in Lauritzen specifically recognized that limitation cases were an exception to the choice-of-law analysis in Lauritzen and left undisturbed the rule governing limitation cases as established in The Titanic. 345 U.S. at 591-92, 73 S.Ct. at 932-33.
 
 
 21
 Korea Shipping argues that the court in The M/V Swibon adopted the Lauritzen test to determine whether to apply a foreign limitation law in a U.S. limitation proceeding. However, in The M/V Swibon, it had been determined that Korean law controlled the underlying substantive rights of the parties, and the court applied the Lauritzen test only to the extent that questions existed whether the Korean limitation attached to the rights.[13] 596 F.Supp. at 1274. In fact, the court in The M/V Swibon specifically rejected the argument, raised again here, that the courts should apply the Lauritzen test to determine the applicable limitation law. 596 F.Supp. at 1270-71.
 
 CONCLUSION
 
 22
 Under The Norwalk Victory, our courts must apply foreign limitation law only if foreign substantive law governs the underlying liability of the parties and foreign limitation law attaches to the foreign substantive law. In all other cases, under The Titanic, the courts must apply U.S. limitation law to limitation proceedings brought in U.S. courts. Here, because the parties have agreed that U.S. substantive law controls the substantive liabilities of the parties, The Norwalk Victory is inapplicable. The district court therefore correctly applied the higher liability limit under U.S. law. Because there was no need to limit Korea Shipping's liability, the district court properly dismissed the action.
 
 
 23
 AFFIRMED.
 
 
 
 [1]
 The law of liability limitation is different from the law of substantive liability. A law of substantive liability, of which COGSA is an example, creates or defines a party's liability; a law of liability limitation places an upper limit on a party's liability that has been created under a substantive law
 
 
 [2]
 The statutory limit differs among countries
 
 
 [3]
 To support its argument that Korean limitation law should apply, Korea Shipping pointed out that the damage was caused by a Korean crew aboard a Korean ship in Korean territorial waters
 
 
 [4]
 In re K.S. Line Corp. (The M/V Swibon), 596 F.Supp. 1268, 1269-70 (D.Alaska 1984)
 
 
 [5]
 See Norwich & New York Transp. Co. v. Wright, 80 U.S. (13 Wall.) 104, 127, 20 L.Ed. 585 (1872)
 
 
 [6]
 Supplemental Rule F(1), Fed.R.Civ.P., 28 U.S.C.A. (West 1970)
 
 
 [7]
 46 U.S.C.A. App.. Sec. 185; Supplemental Rule F(3), Fed.R.Civ.P., 28 U.S.C.A. (West 1970)
 
 
 [8]
 The injunction and the limitation decree do not have extraterritorial effect and do not enjoin or limit the rights of the parties who choose to pursue their claims in foreign courts. In re Bowoon Sangsa Co., Ltd. (The M/T Bowoon), 720 F.2d 595, 599 (9th Cir.1983)
 
 
 [9]
 The primary purpose of a limitation proceeding is "apportioning the limitation fund among the claimants where that fund was inadequate to pay the claims in full." Lake Tankers Corp., 354 U.S. at 153, 77 S.Ct. at 1272. The consolidation of all the claims, while convenient for the petitioner, does not justify a limitation action when the claims do not add up to the limit. Id
 
 
 [10]
 Because, under U.S. law, the value of the vessel is determined after the accident, the U.S. liability limit was minuscule. In contrast, the liability limit under British law, which was based on the tonnage of the vessel, would have provided a much larger fund
 
 
 [11]
 In The Norwalk Victory, in contrast to The Titanic, the foreign limitation law would have provided for a lower liability limit than under U.S. law because the petitioner's ship did not sink and had a greater value than the liability limit under the Belgian limitation law. See 336 U.S. at 389-91, 69 S.Ct. at 624-25
 
 
 [12]
 In Lauritzen, the Supreme Court set forth the following factors to be considered in deciding which country's law governs a maritime tort claim: the place of the wrongful act, the law of the flag, the allegiance or domicile of the injured party, the allegiance of the shipowner, the place of contract, the inaccessibility of a foreign forum, and the law of the forum. 345 U.S. at 583-91, 73 S.Ct. at 928-33. In Hellenic Lines Ltd. v. Rhoditis, 398 U.S. 306, 90 S.Ct. 1731, 26 L.Ed.2d 252 (1970), the Court added an additional factor: the shipowner's base of operations. In Romero v. International Terminal Operating Co., 358 U.S. 354, 79 S.Ct. 468, 3 L.Ed.2d 368 (1959), the Court extended the Lauritzen factors to choice-of-law issues in general maritime cases
 
 
 [13]
 This application of the Lauritzen test was not only superfluous to the conclusion reached in The M/V Swibon but also contrary to the rule set forth in The Titanic and The Norwalk Victory